IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

  Plaintiff,

vs.                         No. CR 07-1811 JB

LUIS HUMBERTO DE LEON-DELGADO,

  Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Luis Humberto De Leon-Delgado's Sentencing Memorandum, filed November 2, 2007 (Doc. 14). The Court held a sentencing hearing on November 27, 2007. The primary issues are: (i) whether the Court should depart from the Criminal History category of III to II because category III substantially over-represents De Leon-Delgado's criminal history and/or does not reliably predict his future criminal conduct; and (ii) whether the Court should vary from an advisory guideline sentence of at least 41 months to De Leon-Delgado's requested sentence of 12 months. Because the Court concludes that a Criminal History category of III substantially overstates De Leon-Delgado's criminal past and is not a good predictor of his future criminal history, the Court grants a downward departure on his Criminal History to category II. Additionally, because the Court believes that the factors in 18 U.S.C. 3553(a) counsel for a variance, but not a variance as substantial as De Leon-Delgado requests, the Court will vary and sentence De Leon-Delgado to 34 months of incarceration.

### FACTUAL BACKGROUND

De Leon-Delgado is twenty-nine years old and has no children. See Presentence

Investigation Report ("PSR") at 1, disclosed October 10, 2007; id. ¶ 30, at 6. De Leon-Delgado has family on both sides of the border, with his mother in Zacatecas, Mexico, and with his father in Chicago, Illinois. See id. ¶ 25, at 6.

On November 12, 2006, De Leon-Delgado was traveling from Chicago to southern California, and passing through New Mexico. See Defendant's Sentencing Memorandum at 2, filed November 2, 2007 (Doc. 14)("Sentencing Memorandum"). De Leon-Delgado thought he was picking up his cousin's girlfriend along with a friend of his cousin. See id. When De Leon-Delgado arrived at the location, he was surprised to see six people. See id. De Leon-Delgado began to leave when several of the stranded travelers began to cry. See id. The people's guide had apparently abandoned them for several days, and hope had evaporated. See id. De Leon-Delgado agreed to take the six people with him. See id.

As the party passed through the Santa Clara Pueblo in New Mexico, De Leon-Delgado was stopped for an equipment failure on the vehicle. See id. De Leon-Delgado believes this stop was a pretext for an otherwise unlawful police stop. See id. In any case, De Leon-Delgado's girlfriend at the time began arguing with the officer after the officer recommended that the girlfriend, who is Caucasian, start dating "her own kind." Id.

The encounter deteriorated, and Immigration and Naturalization Services were summoned. See id. De Leon-Delgado was arrested, and his pickup truck was confiscated. See id. He has not seen his pickup truck since that incident, nor has he been informed of any seizure or forfeiture. See id. De Leon-Delgado believes the Santa Clara Pueblo Police Department or a member of the police department improperly seized the vehicle. See id.

De Leon-Delgado has one prior conviction for transporting aliens. See PSR ¶ 19, at 4-5. Specifically, De Leon-Delgado has a conviction from the District of New Mexico in 2006 for

-2-

Conspiracy in Transporting Illegal Aliens and for Transporting Illegal Aliens and Aiding and Abetting. See id. He was sentenced to 164 days of custody. See id. He was deported to the Republic of Mexico on April 24, 2007. See PSR ¶¶ 10, 19, at 3-4. Since being deported on April 24, 2007, it is unknown where De Leon-Delgado resided and what work, if any, he performed.

## PROCEDURAL BACKGROUND

On August 30, 2007, De Leon-Delgado pled guilty to a one-count Information charging him with a violation of 8 U.S.C. §§ 1326(a) and (b), which criminalize the re-entry of a removed alien. See PSR ¶ 1, at 2. De Leon-Delgado pled without benefit of a plea agreement and, as such, retained his right to argue for an appropriate sentence and also his complete appellate rights. See id. After he pled guilty, a United States Probation Officer prepared a PSR in anticipation of final sentencing. See PSR.

On October 10, 2007, the United States Probation Office ("USPO") disclosed the PSR to all parties, including De Leon-Delgado's attorney. See id. De Leon-Delgado's adjusted offense level is 21. See PSR ¶ 38, at 7. His criminal history category is III. See id. These components of the sentencing guidelines result in a guideline imprisonment range of 46 to 57 months. See id. at 8.

After the disclosure of the PSR, De Leon-Delgado's attorney immediately traveled to where the Defendant was incarcerated at the Torrence County Detention Center in Estancia, New Mexico. See Sentencing Memorandum at 1. The PSR was read entirely to De Leon-Delgado in his native language of Spanish with the assistance of a Spanish-speaking interpreter. See id. On November 2, 2007, De Leon-Delgado, through his counsel, filed a sentencing memorandum. See Sentencing Memorandum.

De Leon-Delgado does not raise any factual dispute with the PSR's contents. See id. at 1. De Leon-Delgado wants the Court to know, however, more information about the crime that forms

the basis for the 16-level enhancement in paragraph 19 of the PSR. See Sentencing Memorandum at 1. Additionally, in the body of the Sentencing Memorandum there is one objection or suggestion that the Court should consider a variance based upon over-representation of criminal history. See id. at 2-3. In addition, De Leon-Delgado's sentencing memorandum requests, pursuant to the factors in 18 U.S.C. § 3553(a), a variance by the Court from the advisory sentencing guideline range to a sentence of 12 months custody. See Sentencing Memorandum at 3.

On November 11, 2007, the United States filed a response to De Leon-Delgado's sentencing memorandum. See United States' Response to Defendant's Sentencing Memorandum (Doc. 15)("United States' Response"). As to criminal history, the United States does not object to the Court finding De Leon-Delgado's criminal history is II rather than III, and thus does not object to a criminal history score reduction of one level to make De Leon-Delgado's criminal history score II. See id. at 2. The United States believes, however, that, given De Leon-Delgado's history and characteristics, a sentence within the advisory guideline range is otherwise appropriate in this case. See id. In sum, the United States' response requests that the Court sentence De Leon-Delgado at the bottom of the applicable sentencing guideline range. See id. at 6. The resulting total offense level of 21, combined with a criminal history category of II, results in a sentencing guideline range of 41 to 51 months.

The USPO's Addendum addressed only the criminal history point guideline issue. See PSR, Addendum to the Presentence Report ("Addendum"). The USPO maintained that it had correctly assessed the criminal history points and that the points accurately reflect De Leon-Delgado's risk of recidivism. See id. at 1.

De Leon-Delgado appeared before the Court for final sentencing on November 27, 2007. At the sentencing hearing the United States said that it would not be opposed to the Court

implementing a sentence within the Guideline range for an offense level of 19, which De Leon-Delgado would have received had he accepted a Fast-Track plea agreement. See Transcript of Hearing at 14:15-23, taken November 27, 2007 ("Tr.")(Ortega).[1]  The United States stated:

> Now, I would state for the record that if the Court decides to deviate by two levels down to an offense level [of] 19[,] I wouldn't object to that, because that's the benefit of what Mr. De Leon would have received under the fast-track plea agreement[.]  That's not something that we do all the time, because we have a fast-track program for a reason, so that we have an efficient and quick way of resolving cases, but this case seems to be a little bit different given the background of Mr. De Leon in comparison to others similarly situated.

Id.

## RELEVANT LAW REGARDING SENTENCING GUIDELINES

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court of the United States severed the mandatory provisions from the Federal Sentencing Act, thus making the Guidelines effectively advisory.  In excising the two sections, the Supreme Court left the remainder of the Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing.  Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable."  543 U.S. at 261.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

    (D) to provide the defendant with needed educational or vocational training, medical
    care, or other correctional treatment in the most effective manner. . . .

18 U.S.C. § 3553(a)(2)(A)-(D).  See 18 U.S.C. § 3551 ("[A] defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.").  To achieve these purposes, 18 U.S.C. § 3553(a) directs sentencing courts to consider: (i) the Guidelines; (ii) the nature of the offense and the defendant's character; (iii) the available sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims.  See 18 U.S.C. § 3553(a)(1), (3)-(7).

    Although the Guidelines are no longer mandatory, both the Supreme Court and the United States Court of Appeals for the Tenth Circuit have clarified that, while the Guidelines are one of several factors enumerated in 18 U.S.C. § 3553(a), they are entitled to the Court's careful consideration.  See Rita v. United States, 127 S. Ct. 2456, 2464 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many").  They are significant because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses."  United States v. Cage, 451 F.3d at 593 (internal quotations omitted).  A reasonable sentence is one that also "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

18 U.S.C. § 3553(a).  See United States v. Booker, 543 U.S. at 261-62.

## **U.S.S.G. § 2L1.2(b)(1)(A)**

The guidelines provide for a base offense level of 8, but there are various enhancements for different specific offense characteristics that will increase the offense level by as many as 16 levels. See U.S.S.G. § 2L1.2(b).  The Sentencing Commission has chosen to classify alien transporters along with violent offenders and drug traffickers, and thus has decided that a 16-level enhancement is appropriate for such individuals.  See U.S.S.G. § 2L1.2(b)(1)(A).  U.S.S.G. § 2L1.2(b)(1)(A) states:

> (1) Apply the Greatest:
>
> If the defendant previously was deported, or unlawfully remained in the United States, after--
>
> (A) a conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months; (ii) a crime of violence; (iii) a firearms offense; (iv) a child pornography offense; (v) a national security or terrorism offense; (vi) a human trafficking offense; or (vii) an alien smuggling offense, increase by 16 levels.

Id.

## **ANALYSIS**

There is no dispute that the USPO has correctly made the guideline calculations.  The 16-level increase is correct.  De Leon-Delgado does not contest the calculation of this guideline application. Rather, De Leon-Delgado argues that a criminal history score of III over-represents his criminal history and that a score of II is more appropriate.  De Leon-Delgado also argues that his situation warrants a variance.  Because the Court believes that a criminal history score of III overrepresents De Leon-Delgado's criminal history, the Court will depart downward one level in his criminal history score.  The Court will also vary and sentence De Leon-Delgado to 34 months of incarceration.

**I.     THE COURT WILL DEPART DOWNWARD 1 LEVEL IN DE LEON-DELGADO'S CRIMINAL HISTORY SCORE.**

De Leon-Delgado objects to paragraph 20 of the PSR, arguing that it unfairly "double counts" the criminal history points for the offense enumerated in paragraph 19. Sentencing Memorandum at 3. De Leon-Delgado asks the Court to remove the 2 criminal-history points assessed pursuant to U.S.S.G. § 4A1.1(e). See id. This finding by the Court would place him in a criminal category of II rather than III. See id. A total offense level of 21, combined with a criminal history category of II, would result in a sentencing guideline range of 41 to 51 months custody.

The USPO correctly points out that, in many cases, similarly situated defendants would have received, pursuant to U.S.S.G. § 4A1.1(d) and § 4A1.1(e), up to 3 criminal history points. See Addendum at 1. In De Leon-Delgado's predicate conviction, however, the court afforded him a mitigating sentence of time served; therefore, he was not under any term of supervision. See id. De Leon-Delgado was deported after his conviction in paragraph 19 of the PSR. See id. He returned to the United States within two and a half months of his deportation. See id.

The timing of De Leon-Delgado's return to the United States does not demonstrate that any prior incarceration sentence has deterred De Leon-Delgado. See id. Nevertheless, the Court finds that De Leon-Delgado's criminal history is overstated. The Court notes that it lacks information about De Leon-Delgado's armed robbery with a firearm arrest in January of 2006. Thus, the USPO is basing De Leon-Delgado's criminal history score on one incident of transporting illegal aliens in 2006.

The Court is concerned about the recency of that crime as well as the seriousness of the 16-level enhancement. The Court believes, however, that a criminal history category of III is too high considering that De Leon-Delgado committed only one crime involved in the calculation of his score

and that he received such a score partly because of the timing of the crimes -- De Leon-Delgado committed his latest offense less than two years after his release from custody subsequent to his prior conviction, thus adding two points to his criminal history score. See U.S.S.G. § 4A1.1(e). Furthermore, the circumstances of the prior crime posed De Leon-Delgado with a difficult choice -- he could leave the abandoned immigrants in New Mexico or take them with him. Thus, given these considerations, the Court believes that a criminal history of III substantially over-represents De Leon-Delgado's criminal history. The Court will, therefore, grant the downward departure on the criminal history category to II and thus sustain the objection.

## II.   THE COURT WILL VARY PURSUANT TO 18 U.S.C. § 3553(a) FROM THE ADVISORY GUIDELINE SENTENCE.

De Leon-Delgado filed his sentencing memorandum to request a reasonable sentence. See Sentencing Memorandum. His plea to the Information was without the benefit of a Fast-Track plea agreement. See id. at 1. The Court concludes that a Guideline sentence range is too high considering De Leon-Delgado's lack of criminal history. Thus, the Court will vary and sentence De Leon-Delgado to 34 months incarceration.

### A.   THE NATURE AND CIRCUMSTANCES OF THE OFFENSE.

Congress has demonstrated that it views the crime of illegal re-entry as serious, not merely regulatory, by imposing a penalty of up to twenty years in prison for those individuals convicted of violating 8 U.S.C. § 1326(b)(2). This crime has one of the harshest enhancement schemes in the Sentencing Guidelines. See 8 U.S.C. § 1326(a) and (b); U.S.S.G. § 2L1.2. The potential penalties associated with illegal re-entry signal congressional intent that it is a serious crime and not merely a regulatory offense. While the seriousness of his crime, indicated by Congress' statutory scheme, does not counsel for a variance, the particular circumstances of the underlying crime suggest that

the advisory guideline sentence, with its 16-level enhancement, would impose an excessive sentence on De Leon-Delgado. Thus, this factor points in two different directions when considering whether a variance is appropriate.

### B. HISTORY AND CHARACTERISTICS OF DE LEON-DELGADO.

De Leon-Delgado is like many illegal immigrants. De Leon-Delgado's is a sad story that the Court sees repeated almost daily in its courtroom. His circumstances are common in illegal-immigration cases. De Leon-Delgado's family situation and personal background do not, however, distinguish him from many of his fellow citizens from Mexico. He is similarly situated to most illegal aliens. It is not unusual or extraordinary for an illegal immigrant defendant to have family in the United States or in Mexico who depend on the defendant for financial and emotional support. This factor, therefore, does not counsel for a variance in De Leon-Delgado's case.

### C. THE NEED FOR THE SENTENCE IMPOSED TO PROMOTE RESPECT FOR THE LAW, TO PROVIDE JUST PUNISHMENT, TO CONSTITUTE ADEQUATE DETERRENCE, AND TO PROTECT THE PUBLIC FROM FURTHER CRIMES OF THE DEFENDANT.

De Leon-Delgado suggests that a sentence substantially below the advisory guideline range would be sufficient to promote respect for the law, to provide just punishment, to provide adequate deterrence, and to protect the public from further crimes by him. See Sentencing Memorandum at 3. He bases his argument on the fact that his criminal history is non-violent and that he has always worked to support himself. See id.

The Court acknowledges that De Leon-Delgado's criminal history is non-violent. The Court is concerned, however, that De Leon-Delgado returned to the United States within months of his deportation. His quick return makes the Court believe that De Leon-Delgado's request for a sentence of 12 months is insufficient to deter him from returning to the Unites States. The Court

does not believe, however, that a Guideline sentence of over 40 months is necessary to promote respect for the law and provide adequate deterrence. Furthermore, the Court is not as concerned with protecting the public from De Leon-Delgado's future crimes, except for immigration crimes, and believes that this concern can be addressed with a sentence below the Guideline range. The Court believes that all of these factors are adequately addressed by imposing a sentence of 34 months incarceration.

### D.    THE NEED TO AVOID UNWARRANTED SENTENCING DISPARITIES AMONG DEFENDANTS WHO HAVE COMMITTED SIMILAR CRIMES.

The Court is most concerned with the need to avoid unwarranted sentencing disparities between De Leon-Delgado and other defendants that have committed similar crimes. Had De Leon-Delgado accepted the Fast-Track plea agreement, and received a 2-level reduction, he would have been more similarly situated to other defendants who have committed similar crimes and are in a similar situation. On the other hand, the Court understands that it needs to recognize the distinction that Congress has put in place for Fast-Track programs by recognizing the value of the program both to the defendant and to the United States. In taking those values into consideration, the Court believes that a sentence at the same level as an individual who accepted the Fast-Track Program is inappropriate because it would fail to recognize any distinction between those who do and do not accept that agreement. The Court is also concerned, however, that a sentence of at least 41 months, at the low end of the guideline range, would not reflect the sentences of people who have committed similar crimes and have similar records to De Leon-Delgado. The Court believes, therefore, that some variance is appropriate. The Court believes that taking the United States' suggestion of treating De Leon-Delgado as if he had received a two-level reduction is fair. Thus, a sentence of 34 months reflects the seriousness of the offense, promotes respect for the law, provides just

punishment, affords adequate deterrence and protects the public. In taking into consideration all of the factors in 18 U.S.C. 3553(a), the Court believes that a sentence of 34 months best balances these factors.   **IT IS ORDERED** that the request in the Defendant's Sentencing Memorandum for a downward departure in his Criminal History Category to II is granted. The Court will also grant the Defendant's request for a variance and sentence him to 34 months of incarceration.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Larry Gomez
  Acting United States Attorney
    for the District of New Mexico
Roberto D. Ortega
  Assistant United States Attorney
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Jim Baiamonte
Albuquerque, New Mexico

    *Attorneys for the Defendant*